IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SP SNT HOLDINGS, LLC And<br>KEVIN WAGNER,<br><br>        *Plaintiffs*,<br>Vs.<br><br>SOCIAL NETWORKING<br>TECHNOLOGY INC., STUART<br>BRUCK, KEVIN OWENS,<br>DAVID M. MCNAMEE,<br>MASSIMO MESSINA,<br>And<br>SHARON AMEZCUA,<br><br>        *Defendants.* | Civil Action<br>No. 17-CV-02712 |

**ANSWER TO FIRST AMENDED COMPLAINT
BY DEFENDANTS STUART BRUCK, KEVIN OWENS,
DAVID McNAMEE, AND MASSIMO MESSINA**

Defendants Stuart Bruck, Kevin Owens, David McNamee, and Massimo Messina answer as follows:

## PARTIES

1.    SP SNT is a limited liability company organized under the laws of South Dakota, with its principal place of business in Florida.

    **ANSWER:** Admitted

2.    Wagner is an individual residing in the state of Texas.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in Paragraph 2.

3.   Company is a Nevada corporation, having a principal place of business, and transacting business, in the state of Kansas.

**ANSWER:** Admitted.

4.   Upon information and belief, Bruck is an individual residing in the state of Kansas.

**ANSWER:** Admitted.

5.   Upon information and belief, McNamee is an individual residing in the state of Florida.

**ANSWER:** Admitted.

6.   Upon information and belief, Owens is an individual residing in the state of Kansas.

**ANSWER:** Admitted.

7.   Upon information and belief, Messina is an individual residing in the state of California.

**ANSWER:** Denied. Messina resides in Kansas.

8.     Upon information and belief, Amezcua is an individual residing in the state of Florida.

     **ANSWER:** Denied for lack of knowledge.

## JURISDICTION AND VENUE

9.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because Plaintiff makes claims that arise under the laws of the United States.

     **ANSWER:** Admitted.

10.    Supplemental jurisdiction on Plaintiff's state law claims is proper in this Court under 28 U.S.C. § 1367 because they are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

     **ANSWER:** Admitted.

11.    This Court has jurisdiction over Defendants Bruck, McNamee, Owens, Messina, and Amezcua under Kansas' long arm statute because they have transacted business in the state of Kansas and have committed tortious acts in the state of Kansas.

> **ANSWER:** Admitted that Defendants transacted business in Kansas. They deny committing any "tortious acts."

12. Venue is proper in the District of Kansas because the Company resides in the State of Kansas, maintains its principal place of business in the state of Kansas, and otherwise transacts business in the state of Kansas.

> **ANSWER:** Admitted.

13. Venue is proper in the District of Kansas because the actions complained of herein took place in Kansas.

> **ANSWER:** Admitted.

14. All conditions precedent to bringing this action have been complied with, waived, excused or otherwise met.

> **ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in Paragraph 14

## GENERAL FACTUAL ALLEGATIONS

15. At all material times, Defendants orchestrated a scheme to raise capital for the development, operation and marketing of the

Company's business including, its operations in Kansas.   Defendants created an organized ring of sales people, agents, and attorneys, to actively market and advertise their business and to generally solicit a broad audience of investors for same.

> **ANSWER:** Denied that there was a scheme and an organized ring to the extent Plaintiffs imply crafty or unethical practices by Defendants. That Defendants offered investment opportunities to Accredited Investors, such as Plaintiffs, is true. An Accredited Investor is defined by the Securities and Exchange Commission, in part, as someone who can demonstrate a consistently high annual income - $200,000 for individuals and $300,000 jointly with expectation of earning the same or higher income. In other words, Defendants are wealthy, sophisticated investors who were also familiar with all or some of the Defendants and with SNT.

16.   In or about December 2016, this organized ring solicited Plaintiffs to make an investment in the Company by purchasing shares of the Company's common stock.

**ANSWER:** Admitted in part. Defendants explained the possibility of the success of SNT as well as the risks.

17. In or about December 2016, and prior to their investments in the Company, Defendants made numerous material misrepresentations to Plaintiffs.

**ANSWER:** Denied.

18. In or about December 2016 in Pasadena, California, Defendant Social Networking Technology, Inc. made a presentation to the owner of Plaintiff SP SNT Holdings, LLC, and representatives of Plaintiff Kevin Wagner, among other attendees.

**ANSWER:** Admitted.

19. Defendant Social Networking Technology, Inc. was represented at this presentation by Defendants Kevin Owens, Stuart Bruck, and Sharon Amezcua.

**ANSWER:** Admitted.

20. At this presentation, Defendants Owens, Bruck, and Amezcua each represented to Plaintiff SP SNT Holdings, LLC and representatives of Plaintiff Kevin Wagner that:

6

a.   the Company created news stories using proprietary artificial intelligence technology that provided it a competitive advantage in the marketplace, and that this technology allowed them to produce millions of news story pages in real time;

b.   the Company had sufficient capital and cash flow (from generating news stories using its proprietary artificial intelligence technology, getting publishers to use the generated pages as part of their own sites, putting ads on those pages, and splitting the ad revenue with the publishers) to continue it operate its business, and was securing additional investments solely for growth.

**ANSWER:** Admitted in part. The allegation of "millions of news story pages in real time" is an overstatement. The artificial intelligence used by SNT was deemed by Chris Wagner, the brother of Plaintiff Kevin Wagner, to be quite good. Chris Wagner went on to work as the Artificial Intelligence Manager of SNT.

**ANSWER:** Denied. Plaintiffs were shown the financial condition of SNT. At that time, it had a significant cash shortage. Plaintiffs, fully aware of the financial condition of SNT, with considerable knowledge and experience with the risks of investing in "startups".

21. Defendant Amezcua represented at this presentation that she had personally invested money in the Company and that she was a successful banker specializing in technology companies and had built over 700 companies.

   **ANSWER:** Denied.

22. Defendants Owens, Bruck, and Amezcua made the same representations to representatives of Plaintiff SP SNT Holdings, LLC and Plaintiff Kevin Wagner at other investor presentations in Pasadena and Hollywood, California and in Wichita, Kansas, around the same time period.

   **ANSWER:** Denied.

23. Plaintiffs relied on these representations in making their investment decisions.

   **ANSWER:** Denied.

24.   These representations were material to Plaintiffs' investment decisions.

> **ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in Paragraph 24.

25.   In December 2016, Plaintiffs were presented with a Subscription Agreement, prepared by a law firm, that represented that the sale of securities by the Company did not have to be registered because the offering was exempt from registration pursuant to Section 4(a)(2) of the Securities Act of 1933 (the "Securities Act").

> **ANSWER:** Admitted.

26.   In furtherance of the investment and relying upon Defendants as to validity of the offering, Plaintiff SP SNT executed a Subscription Agreement on or about December 16, 2016 and made its investment in the company. Plaintiff Wagner executed a Subscription Agreement on or about December 22, 2016 and made his investment in the Company.

> **ANSWER:** Admitted.

27.   after they purchased the investment, Plaintiffs discovered that contrary to the representations of Defendants:

    a.   Amezcua had not personally made an investment in the Company;

        **ANSWER:** Denied.

    b.   Amezcua was not a successful banker specializing in technology companies and had not built over 700 companies;

        **ANSWER:** Denied.

    c.   the Company did not have sufficient cash flow from generating news stories using its proprietary artificial intelligence technology, getting publishers to use the generated pages as part of their own sites, putting ads on those pages, and splitting the ad revenue with the publishers to operate its business; and

        **ANSWER:** Plaintiffs were shown the financial condition of SNT. At that time, it had a significant cash shortage. Plaintiffs, fully aware of the financial condition of SNT, with considerable knowledge and experience with the risks of investing in "startups".

d.   The Company did not have proven, proprietary artificial intelligence technology that provided it a competitive advantage in the marketplace.

ANSWER: Denied. The artificial intelligence used by SNT was deemed by Chris Wagner, the brother of Plaintiff Kevin Wagner, to be quite good. Chris Wagner went on to work as the Artificial Intelligence Manager of SNT.

28.   Further, Defendants failed to disclose that the Company was paying Amezcua, an unregistered broker, transaction-based fees for soliciting investors including the investment being made by Plaintiffs.

ANSWER: Denied.

29.   In addition, Company failed to disclose that Bruck had then recently been accused of sexual harassment and had settled such claim.

ANSWER: Admitted in part. Defendants made no such disclosure because it is untrue.

30.   If Plaintiffs had known of the above described misrepresentations and omissions, they would not have invested in the Company.

**ANSWER:** Denied.

31.   Defendants further misrepresented that the offering of securities was made in a manner to comply with the requirements of Section 4(a)(2) of the Securities Act and that it was otherwise exempt from registration.

**ANSWER:** Denied.

32.   The securities Defendants sold to Plaintiffs were not a federally covered security, and the Kansas Uniform Securities Act (hereinafter "KUSA") applied to their sale.

**ANSWER:** Denied.

## COUNT I
## ACTION UNDER SECTION 12(a)(1) OF THE SECURITIES ACT FOR FAILURE TO COMPLY WITH FEDERAL REGISTRATION REQUIREMENTS
### (against Defendants)

33   Plaintiffs re-allege paragraphs 1 through 32 as though fully set forth herein.

**ANSWER:** Defendants incorporate their answers to Paragraphs 1 through 32.

34.   This is an action for rescission pursuant to Section 12(a)(1) of the Securities Act of 1933.

**ANSWER:** Admitted.

35    The Company sold its common stock to Plaintiffs.

> **ANSWER:** Admitted in part. The Plaintiffs bought stock of the Company because based on their considerable experience as investors and being Accredited Investors, they believed that they would profit by this investment.

36.   The Company sold its common stock in the absence of a registration statement or failure to meet prospectus requirements.

> **ANSWER:** Denied.

37.   The Company used the mail or facilities of interstate commerce in connection with the sale or offer.

> **ANSWER:** Admitted.

38.   Plaintiffs have been damaged as a result of the Company's afore-mentioned actions.

> **ANSWER:** Denied.

39.   Plaintiffs have retained the undersigned to represent it in this action and have agreed to pay a reasonable attorney's fee for services.

> **ANSWER:** Admitted.

## COUNT II
## ACTION UNDER SECTION 15 OF THE
## SECURITIES ACT FOR FAILURE TO COMPLY WITH
## FEDERAL REGISTRATION REQUIREMENTS
### (against Bruck, McNamee, Owens, Messina, and Amezcua)

40.    Plaintiffs re-allege paragraphs 1 through 39 as though fully set
forth herein.

> **ANSWER:** Defendants incorporate their answers to Para-
> graphs 1 through 39.

41.    This is an action for rescission pursuant to Section 15 of the
Securities Act.

> **ANSWER:** Defendants admit that the claim is brought under
> the auspices of Section 15 but deny that Defendants have any
> liability under it.

42.    As set forth in Count I above, the Company is a primary violator of
Section 12 of the Securities Act.

> **ANSWER:** Denied.

43.    At the time of such violation, Bruck, McNamee, Owens, Messina,
and Amezcua were in possession, direct or indirect, of the power to
direct or cause the direction of the management and policies of the
Company, whether through the ownership of voting securities, by

14

contract, or otherwise, and thereby, are jointly and severally responsible with the Company for the violation of Section 11 of the Securities Act by the Company.

> **ANSWER:** Denied.

44.  Plaintiffs have been damaged as a result of the aforementioned actions of the Company, Bruck, McNamee, Owens, Messina, and Amezcua.

> **ANSWER:** Denied.

45.  Plaintiffs have retained the undersigned to represent it in this action and have agreed to pay a reasonable attorneys' fee for services.

> **ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in Paragraph 45.

## COUNT III
## ACTION FOR SALE OF UNREGISTERED SECURITIES IN VIOLATION OF KUSA
### (against Defendants)

46.  Plaintiffs re-allege paragraphs 1 through 45 as though fully set forth herein.

**ANSWER:** Defendants reassert their Answers to paragraphs 1 through 45.

47. This is an action for rescission for the selling of unregistered securities pursuant to K.S.A. § 17-12a509(b) and K.S.A. § 17-12a301.

**ANSWER:** Admitted the action is brought as plead, but any liability of Defendants is denied.

48. Kansas law required the Company to register the securities sold to Plaintiffs.

**ANSWER;** Denied.

49. The Company sold nonregistered securities to Plaintiffs in violation of the KUSA.

**ANSWER;** Denied.

50. Defendants personally participated and aided in the sale of the nonregistered securities to Plaintiffs.

51. The securities were not exempt from registration pursuant to Kansas or Federal law.

**ANSWER;** Denied.

52.   The securities were not sold in an exempted transaction pursuant to Kansas or Federal law.

      **ANSWER;**  Denied.

53.   The securities were not a federal covered security because the Company failed to comply with federal requirements for preemption of state securities laws.

      **ANSWER;**  Denied.

54.   Bruck, McNamee, Owens, Messina, and Amezcua were control persons.

      **ANSWER;**  Admitted.

55.   Pursuant to K.S.A. § 17-12a509(b)(1), Plaintiffs rescind their purchase of the securities for failure to register the securities as required by K.S.A. § 17-12a509(b)(1), demanding return of their investment of $1,000,000 plus applicable statutory interest thereon.

      **ANSWER;**  Denied.

56.   Plaintiffs have retained the undersigned to represent them in this action and have agreed to pay a reasonable attorneys' fee for

services. Plaintiffs are entitled to their reasonable attorneys' fees and costs pursuant to K.S.A. § 17-12a509(b)(1).

**ANSWER;**  Denied.

57.   All conditions precedent to bringing this action have been complied with, waived, excused or otherwise met by Plaintiffs.

**ANSWER:** Denied.

## COUNT IV
## ACTION FOR NEGLIGENT MISREPRESENTATION
### (against Defendants)

58.   Plaintiffs re-allege paragraphs 1 through 57 as though fully set forth herein.

**ANSWER:** Defendants incorporate their answers to the allegations in paragraphs 1 through

59.   Defendants made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

**ANSWER:** Denied.

60.   In or about December 2016 in Pasadena, California, Defendant Social Networking Technology, Inc. made a presentation to the

owner of Plaintiff SP SNT Holdings, LLC and representatives of Plaintiff Kevin Wagner, among other attendees.

**ANSWER:**  Admitted.

61    Defendant Social Networking Technology, Inc. was represented at this presentation by Defendants Kevin Owens, Stuart Bruck, and Sharon Amezcua.

**ANSWER:**  Admitted.

62.   At this presentation, Defendants Owens, Bruck, and Amezcua each represented to Plaintiff SP SNT Holdings, LLC and representatives of Plaintiff Kevin Wagner that:

a.    the Company created news stories using proprietary artificial intelligence technology that provided it a competitive advantage in the marketplace, and that this technology allowed them to produce millions of news story pages in real time;

**ANSWER:** Admitted in part. The allegation of "millions of news story pages in real time" is an overstatement. The artificial intelligence used by SNT was deemed by Chris Wagner, the brother of Plaintiff Kevin Wagner, to be quite

good. Chris Wagner went on to work as the Artificial Intelligence Manager of SNT

b.  the Company had sufficient capital and cash flow (from generating news stories using its proprietary artificial intelligence technology, getting publishers to use the generated pages as part of their own sites, putting ads on those pages, and splitting the ad revenue with the publishers) to continue it operate its business, and was securing additional investments solely for growth.

ANSWER: Plaintiffs were shown the financial condition of SNT. At that time, it had a significant cash shortage. Plaintiffs, fully aware of the financial condition of SNT, with considerable knowledge and experience with the risks of investing in "startups".

63.  Defendant Amezcua represented at this presentation that she had personally invested money in the Company and that she was a successful banker specializing in technology companies and had built over 700 companies.

ANSWER: Denied.

64.   Defendants Owens, Bruck, and Amezcua made the same representations to representatives of Plaintiff SP SNT Holdings, LLC and Plaintiff Kevin Wagner at other investor presentations in Pasadena and Hollywood, California and in Wichita, Kansas, around the same time period.

> **ANSWER:** Denied.

65.   After they purchased the investment, Plaintiffs discovered that contrary to the representations of Defendants:

a.   Amezcua had not personally made an investment in the Company;

> **ANSWER:** Denied.

b.   Amezcua was not a successful banker specializing in technology companies and had not built over 700 companies;

> **ANSWER:** Denied.

c.   the Company did not have sufficient cash flow from generating news stories using its proprietary artificial intelligence technology, getting publishers to use the generated pages as part of their own sites, putting ads on

those pages, and splitting the ad revenue with the publishers to operate its business; and

**ANSWER:** Plaintiffs were shown the financial condition of SNT. At that time, it had a significant cash shortage. Plaintiffs, fully aware of the financial condition of SNT, with considerable knowledge and experience with the risks of investing in "startups".

d.   the Company did not have proven, proprietary artificial intelligence technology that provided it a competitive advantage in the marketplace.

**ANSWER:** Denied. The artificial intelligence used by SNT was deemed by Chris Wagner, the brother of Plaintiff Kevin Wagner, to be quite good. Chris Wagner went on to work as the Artificial Intelligence Manager of SNT.

66.   Defendants either knew of the misrepresentations, made the misrepresentations without knowledge of its truth or falsity, or should have known the representations were false.

**ANSWER:** Denied.

67. Defendants intended such misrepresentations to induce Plaintiffs to make their monetary investment.

**ANSWER:** Denied.

68. Plaintiffs justifiably relied to their detriment on such misrepresentations, having suffered injury as described herein.

**ANSWER:** Denied.

69. All conditions precedent to bringing this action have been complied with, waived, excused or otherwise met by Plaintiffs.

**ANSWER:** Denied.

## COUNT V
## ACTION FOR MISEPRESENTATION MADE IN
## THE SALE OF SECURITIES PURSUANT TO KUSA

70. Plaintiffs re-allege paragraphs 1 through 69 as though fully set forth herein.

**ANSWER:** Defendants incorporate their answers to Paragraphs 1 through 69.

71. This is an action for rescission pursuant to K.S.A. §§17-12a509(b).

**ANSWER:** Admitted.

72. To obtain Plaintiffs' investment, in or about December 2016 in Pasadena, California, Defendant Social Networking Technology,

Inc. made a presentation to the owner of Plaintiff SP SNT Holdings, LLC and representatives of Plaintiff Kevin Wagner, among other attendees.

**ANSWER:** Admitted.

73. Defendant Social Networking Technology, Inc. was represented at this presentation by Defendants Kevin Owens, Stuart Bruck, and Sharon Amezcua.

**ANSWER:** Admitted.

74. At this presentation, Defendants Owens, Bruck, and Amezcua each represented to Plaintiff SP SNT Holdings, LLC and representatives of Plaintiff Kevin Owens that:

a. the Company created news stories using proprietary artificial intelligence technology that provided it a competitive advantage in the marketplace, and that this technology allowed them to produce millions of news story pages in real time;

**ANSWER:** Denied. The artificial intelligence used by SNT was deemed by Chris Wagner, the brother of Plaintiff Kevin

Wagner, to be quite good. Chris Wagner went on to work as the Artificial Intelligence Manager of SNT

b.    the Company had sufficient capital and cash flow (from generating news stories using its proprietary artificial intelligence technology, getting publishers to use the generated pages as part of their own sites, putting ads on those pages, and splitting the ad revenue with the publishers) to continue it operate its business, and was securing additional investments solely for growth.

**ANSWER:** Plaintiffs were shown the financial condition of SNT. At that time, it had a significant cash shortage. Plaintiffs, fully aware of the financial condition of SNT, with considerable knowledge and experience with the risks of investing in "startups".

75.   Defendant Amezcua represented at this presentation that she had personally invested money in the Company and that she was a successful banker specializing in technology companies and had built over 700 companies.

**ANSWER:** Denied.

76.   Defendants Owens, Bruck, and Amezcua made the same representations to representatives of Plaintiff SP SNT Holdings, LLC and Plaintiff Kevin Wagner at other investor presentations in Pasadena and Hollywood, California and in Wichita, Kansas, around the same time period.

      **ANSWER:** Denied.

77.   After they purchased the investment, Plaintiffs discovered that contrary to the representations of Defendants:

    a.   Amezcua had not personally made an investment in the Company;

    b.   Amezcua was not a successful banker specializing in technology companies and had not built over 700 companies;

    c.   the Company did not have sufficient cash flow from generating news stories using its proprietary artificial intelligence technology, getting publishers to use the generated pages as part of their own sites, putting ads on those pages, and splitting the ad revenue with the publishers to operate its business; and

d.   the Company did not have proven, proprietary artificial intelligence technology that provided it a competitive advantage in the marketplace.

**ANSWER:** Denied.

78.   Plaintiffs did not know of these untruths or omissions.

**ANSWER:** Denied.

79.   Plaintiffs made the monetary investment in the Company in reasonable reliance upon and as a result of the actions and omissions of Defendants complained of herein.

**ANSWER:** Denied.

80.   The actions and omissions of Defendants complained of herein violated K.S.A. § 17-12a509(b).

**ANSWER:** Denied.

81.   Because of such violations, Plaintiffs rescind their monetary investment pursuant to K.S.A. § 17-12a509(b)(1), demanding return of their investment of $1,000,000 plus applicable statutory interest thereon.

**ANSWER:** Denied.

82.   Plaintiffs have retained the undersigned to represent it in this action and have agreed to pay a reasonable attorneys' fee for services. Plaintiffs are entitled to their reasonable attorneys' fees and costs pursuant to K.S.A. § 17-12a509(b)(1).

> **ANSWER:** Denied.

83.   All conditions precedent to bringing this action have been complied with, waived, excused or otherwise met by Plaintiffs.

> **ANSWER:** Denied.

**COUNT VI**
**ACTION FOR PAYMENT OF UNDISCLOSED**
**COMMISSIONS OR FINDER'S FEES PURSUANT TO FSIPA**
**(against Defendants)**

84.   Plaintiffs re-allege paragraphs 1 through 83 as though fully set forth herein.

> **ANSWER:** Defendants incorporate their answers to Paragraphs 1 through 84.

85.   This is an action for rescission pursuant to K.S.A. § 17-12a509(d) and § 17-12a509(b)(1).

> **ANSWER:** Admitted.

86.   At all material times, Amezcua, for consideration received or to be received directly or indirectly from the Company or from an agent

or employee of the Company, advertised, circulated, communicated, and published for sale the securities of Company to Plaintiffs, and failed to fully disclose the receipt, whether past or prospective, of such consideration and the amount of the consideration in violation of K.S.A. § 17-12a509(d) and 17-12a509(b)(1).

 **ANSWER:** Denied.

87. Amezcua was not licensed as a broker/agent as required by KUSA.

 **ANSWER:** Admitted.

88. Company was acting as an unregistered broker-dealer and paying commissions to an unregistered broker/agent in violation of K.S.A. § 17-12a401.

 **ANSWER:** Denied.

89. Bruck, McNamee, Owens, and Messina are jointly and severally liable with the Company pursuant to K.S.A. §17-12a509(g)(2).

 **ANSWER:** Denied.

90. Pursuant to K.S.A. § 17-12a509(d) and 17-12a509(b)(1), Plaintiffs rescind their purchase of the securities in Company, demanding return of their investment of $1,000,000 plus applicable statutory interest thereon.

**ANSWER:** Plaintiffs' claim for rescission is denied.

91.   Plaintiffs have retained the undersigned to represent it in this action and have agreed to pay a reasonable attorneys' fee for services. Plaintiffs are entitled to their reasonable attorneys' fees and costs pursuant to K.S.A. § 17-12a509(b)(1).

  **ANSWER:** Denied.

92.   All conditions precedent to bringing this action have been complied with, waived, excused or otherwise met by Plaintiffs.

  **ANSWER:** Denied.

## DEFENSES

93.   Any financial loss suffered by Plaintiffs was caused by factors other than the alleged acts or omissions of Defendants.

94.   Plaintiffs' claims are barred in whole or in part because Plaintiffs' financial loss was the result of their own actions or inactions.

95.   Plaintiffs are all "Accredited Investors" and were aware of and assumed all risks associated with investing in a start-up business enterprise.

96.   Defendants provided Plaintiffs with information on which the Plaintiffs could rely and which was more than adequate for the

Plaintiffs to make an intelligent and knowledgeable investment decision, and Plaintiffs engaged and consulted experts to assist them in evaluating that information and in performing due diligence in evaluating the potential investment and its risks. Any financial loss incurred by Plaintiffs was caused by Plaintiffs failure to competently or sufficiently evaluate the information they were provided by Defendants, by the negligence or incompetence of their personal investment advisors, or by the Plaintiffs electing to disregard the recommendations of their personal investment advisors.

97.   Plaintiff's claims are barred for failure to show material misrepresentation or omission by Defendants.

JOSEPH, HOLLANDER & CRAFT LLC

/s/ Ross A. Hollander

_____

Ross A. Hollander, #09010
500 N. Market Street
Wichita, Kansas 67214-3514
Tel: (316) 262-9393
Fax: (316) 262-9006
Email: rhollander@josephhollander.com

## Certificate of Service

I hereby certify that on the 22nd day of May, 2018, I electronically filed the foregoing Answer with the Clerk by using the CM/ECF system which will send a notice of electronic filing to all parties requesting electronic notice.

/s/ Ross A. Hollander
Ross A. Hollander, #09010